COMMONWEALTH *vs.* ANTHONY IANELLO.

Hampden.  September 8, 1987. — December 9, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Rape. Indecent Assault and Battery. Practice, Criminal,* Conduct of pros-
ecutor, Grand jury proceedings. *Evidence,* Expert opinion. *Witness,*
Expert, Child.

A judge considering a criminal defendant's motion to dismiss indictments,
based on the prosecutor's comments to the grand jury about the defend-
ant's temperament just prior to the defendant's testimony before them,
correctly denied the motion on the basis of his conclusion that the
comments, although improper, did not impair the integrity of the grand
jury. [199]

At the trial of indictments charging sexual offenses, the judge properly
excluded as evidence the proffered testimony of the defendant's expert,
a psychologist, where the witness, in effect, would have been giving
his opinion on the veracity of the child victim. [199-203]

INDICTMENTS found and returned in the Superior Court De-
partment on March 6, 1985.

A motion to dismiss was heard by *George C. Keady, Jr.,*
J., and the cases were tried before *John F. Murphy, Jr., J.*

The Supreme Judicial Court granted a request for direct
appellate review.

*Brownlow M. Speer,* Committee for Public Counsel Serv-
ices, for the defendant.

*Edward B. Fogarty,* Assistant District Attorney, for the
Commonwealth.

NOLAN, J. From his conviction of forcible rape of a child
under sixteen years of age (G. L. c. 265, § 22A [1986 ed.])
and of indecent assault and battery on a child under fourteen
(G. L. c. 265, § 13B [1986 ed.]), the defendant appeals. We
allowed the defendant's application for direct appellate review.
He raises two issues: (1) the denial of his motion to dismiss

the indictments on the ground of prosecutorial misconduct, and (2) the correctness of the judge's exclusion of expert testimony on the credibility of a child victim of sexual abuse. We affirm the convictions.

1. *The defendant's motion to dismiss.* Prior to trial, the defendant moved to dismiss the indictments because of "prosecutorial misconduct with the Grand Jury which voted said indictments." A grand juror after the indictments were returned informed the defendant of alleged misconduct by the prosecutor. The grand juror ultimately filed an affidavit detailing the alleged acts of impropriety. In his motion to dismiss, the defendant set forth the various acts and comments and claimed misconduct by the prosecutor. The motion judge denied the motion after reading the grand jury minutes, reviewing the grand juror's affidavit and making findings of fact and rulings of law.

The grand juror reported in her affidavit that "[b]efore Mr. Ianello testified, the assistant District Attorney [presenting the case to the grand jury] said she had heard he was 'hot tempered and knows Karate so be careful and don't get him too mad. He's about five feet tall but he's all muscle.'" The juror also stated in the affidavit that "[s]ome of the unfairness took place at a time when the court stenographer was not present." The comment about the defendant's temperament does not appear anywhere in the grand jury minutes. However, for purposes of the motion, the motion judge assumed that the comment had been made by the prosecutor.

In determining whether dismissal of the indictments was required, the motion judge considered whether the "integrity of [the] grand jury . . . [was] impaired" by the comment. *Commonwealth* v. *McJunkin,* 11 Mass. App. Ct. 609, 613 (1981), quoting *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 655 (1979). The judge began his inquiry with the assumption that prosecutorial misconduct, if found, would not generally result in dismissal of the indictments. However, dismissal would be required if he found a violation of the defendant's constitutional rights or if he found that the prosecutor played an "ignoble part." *Commonwealth* v. *Lincoln,* 368 Mass. 281, 285 (1975).

The judge found no constitutional violations nor evidence of the prosecutor playing an "ignoble part" by purposefully using false testimony. While the judge noted that such comments were improper, he did not believe that they subverted the integrity of the grand jury. We agree. The judge also observed correctly that the jurors had heard an abundance of evidence which justified the indictments, including that of the victim, prior to the improper statements by the prosecutor.

The defendant insists that the motion judge's denial of his motion to dismiss was error of law. He claims that the judge used the incorrect standard, whether the integrity of the grand jury was impaired, in deciding whether the indictments should have been dismissed. Rather, the defendant claims that the assistant district attorney's statement itself rendered the grand jury proceedings and indictments void without any further showing. For this proposition, the defendant relies upon *Commonwealth* v. *Pezzano,* 387 Mass. 69, 72-73 (1982), where we stated that "the presence of an unauthorized person before a grand jury will void an indictment." The defendant argues that once the assistant district attorney made the improper comments, she no longer represented the Commonwealth but became instead an unauthorized "stranger" in the grand jury room. We firmly reject this argument, which is wholly lacking in authority.

We affirm the motion judge's denial of the defendant's motion to dismiss the indictments because we conclude that the integrity of the grand jury proceedings was not impaired by the assistant district attorney's comments. The motion judge was correct in using this test to determine whether the indictments should have been dismissed. *Commonwealth* v. *O'Dell,* 392 Mass. 445, 447 (1984). While we agree that the comments, if made, were improper, the judge in his findings of fact and rulings of law acted within his discretion in concluding that they did not impair the integrity of the grand jury.

2. *Exclusion of expert testimony.* We consider the defendant's claim that the trial judge abused his discretion in refusing to allow a psychologist to give expert testimony as to the possibility of a false allegation of sexual abuse arising from a

custody and visitation dispute. We begin with the proposition that the trial judge has broad discretion with respect to the admission of expert testimony. See, e.g., *Commonwealth* v. *Gaulden,* 383 Mass. 543, 549 (1981). The qualification of a witness to offer expert opinion on a question is determined by the judge as a preliminary issue of fact. *Commonwealth* v. *Seit,* 373 Mass. 83, 92 (1977). The judge's conclusion in this matter will not lightly be overturned. *Commonwealth* v. *Campbell,* 378 Mass. 680, 704 (1979). Traditionally, the appellate courts have accorded great deference to the ruling of trial judges in this area. *Commonwealth* v. *Francis,* 390 Mass. 89, 99 (1983). With this in mind, we turn to the defendant's allegations.

The defendant claims that the judge abused his discretion and committed error of law when he refused to allow Dr. Frank Sacco to testify that a child may falsely accuse a parent of sexual assault because of the stress involved in an interspousal dispute over custody or visitation of the child. The defendant insists that Dr. Sacco was eminently qualified as an expert and that the foundation had been laid for the introduction of his testimony. The defendant also argues that the jury would have been aided by Dr. Sacco's testimony since the subject matter of the proffered testimony was beyond the common knowledge of the jury.

Our examination of the transcript of the voir dire of Dr. Sacco leads us to the conclusion that the trial judge did not exclude Dr. Sacco's testimony because the doctor lacked the necessary expertise to be qualified as an expert in the treatment of sexually abused children. It appears that Dr. Sacco did possess the necessary academic credentials and experience to qualify as an expert in this area.[1]

By way of background, Dr. Sacco was interrogated in the voir dire hearing as to his familiarity with literature concerning

---

[1] Since the exclusion was not based on the lack of qualifications but rather on the basis of the impermissible opinion Dr. Sacco offered, we need not address whether the defense established various foundation requirements for the introduction of the opinion.

allegations of sexual abuse made by five and six year olds. Dr. Sacco stated that he was familiar with the conclusions of the literature with respect to the likelihood of children lying about sexual abuse. When asked for the conclusions of the literature, Dr. Sacco stated that children "rarely make these things up except under two general exceptions." The doctor went on to explain the two exceptions, one being the case of a custody or visitation battle. The other (which is not relevant here) occurs when either parent is severely, mentally disturbed. The doctor concluded by saying "[t]hose are the two areas where the child makes up — other than that, children don't have the wherewithall to make it up." At this point the defense attorney addressed the court and stated that "that would be the test that we propose to offer." The judge then stated, "I take it these are the *expert opinions* that you're referring to?" (Emphasis supplied.) The judge immediately asked the Commonwealth, "Do you object to that?" The Commonwealth objected and the judge sustained the objection without further comment.

It appears clear from the defendant's prior offer of proof and voir dire questioning that he intended to offer expert opinion on the likelihood of a child's lying about sexual abuse if the child's parents were locked in a custody or visitation dispute. The judge focused on, and the Commonwealth objected to, this proffered *opinion*. Neither the judge nor the Commonwealth questioned or commented upon Dr. Sacco's educational background or experience during the voir dire. Accordingly, our inquiry will be limited to whether the judge abused his discretion by excluding the expert testimony on the basis of the nature of the opinion.

The defendant urges that mental health professionals have just recently begun to recognize the "phenomenon" of child custody disputes giving rise to false allegations of sexual abuse. Thus, he argues that the subject matter was beyond common knowledge and that the jury would have been aided by expert testimony on this topic. We are not swayed by the defendant's characterization of the proffered opinion.

Rather, we believe the proffered opinion was no more than the expert's over-all impression of the truthfulness of members

of a class (children in custody disputes) of which the specific complainant was a member. While the proposed testimony fell short of rendering an opinion on the credibility of the specific child before the court, we see little difference in the final result. It would be unrealistic to allow this type of expert testimony and then expect the jurors to ignore it when evaluating the credibility of the complaining child. Since we believe that Dr. Sacco's opinion ultimately would have been applied to the child alleging sexual abuse, we rule that the judge was correct in excluding the expert testimony. If the testimony had erroneously been allowed, Dr. Sacco would have impermissibly intruded upon the vital function of the jury.

The issue of credibility of a witness focuses on both the individual's ability and willingness to tell the truth. *Commonwealth* v. *Widrick,* 392 Mass. 884, 888 (1984). This court has made clear that an expert may not offer an opinion on a witness' credibility. "Evaluations of credibility are, of course, within the exclusive province of the trier of fact." *Commonwealth* v. *Bohannon,* 376 Mass. 90, 94 (1978). Accord *United States* v. *Azure,* 801 F.2d 336, 341 (8th Cir. 1986) (trial court abused discretion in allowing pediatrician to give opinion as to the believability of child alleging sexual abuse). "We look to the jury after an adversary trial to make the decision as to what testimony to believe." *Commonwealth* v. *Francis,* 390 Mass. 89, 100-101 (1983). An expert may not render an opinion on the credibility of a witness because the jury is capable of making that assessment without the aid of an expert. *Simon* v. *Solomon,* 385 Mass. 91, 105 (1982).

We have explored whether other jurisdictions have admitted expert testimony on the credibility of children alleging sexual assault. Some courts appear to draw distinctions and allow expert testimony indirectly touching on the alleged victim's veracity when the expert partially bases his opinion on a corroborating physical or psychiatric evaluation. See *Brown* v. *State,* 736 P.2d 1125 (Wyo. 1987). However, with these exceptions, courts appear to be in substantial agreement that experts may not render an opinion on a witness' credibility. E.g., *State* v. *Bellotti,* 383 N.W.2d 308 (Minn. App. 1986); *State* v.

*Brodniak,* 221 Mont. 212 (1986); *State* v. *Heath,* 316 N.C. 337 (1986); *Commonwealth* v. *Seese,* 512 Pa. 439 (1986). Only Hawaii appears to allow expert testimony directly on the victim's veracity. *State* v. *Kim,* 64 Hawaii 598 (1982).

We also note that at least one jurisdiction has ruled that jurors may be aided by expert testimony on recognized principles of behavioral science which can be applied to issues in the case. See *State* v. *Lindsey,* 149 Ariz. 472 (1982) (allowing testimony on the behavioral patterns of victims of incest or molestation). Arizona has allowed testimony on the general behavioral characteristics of members of the class (rape, incest victims) at issue, even if the testimony touches on the issue of credibility. However, even Arizona does not allow the expert to give an opinion on the particular witness' credibility nor on the general truthfulness of witnesses of that class. *State* v. *Lindsey, supra* at 475. Thus, there is recognition that while behavioral patterns may be beyond the average juror's understanding, issues of credibility are solely within their province. *Id.* at 476.

The courts guard against encroachments on the province of the jury. For example, in *Commonwealth* v. *Widrick, supra* at 891, this court upheld a judge's refusal to order a psychiatric examination to determine the credibility of children alleging sexual abuse. The defendant insisted that the children fabricated the accusations. *Id.* at 886. We noted that such an order would have intruded upon the jury's "vital function." *Id.* at 889. Similarly, in *Commonwealth* v. *Brusgulis,* 398 Mass. 325 (1986), a defendant repeatedly asserted that a young witness who alleged sexual abuse had been "rehearsed" by her mother and other parties. There, we noted that "[w]hether a witness testifies truthfully or according to some fictional script is for the jury to decide." *Id.* at 331 n.12.

3. *Conclusion.* There was no error in the denial of the motion to dismiss and in the exclusion of the proffered testimony of the expert.

*Judgment affirmed.*